Okay, our fourth case today is Reed Auto of Overland Park v. Landers McLarty, 21-3225, and we'll hear from Mr. Bartels. Good morning, your honors. May it please the court. The trial court erred in determining that Reed Automotive was not Overland Park Jeep's successor under the 2007 settlement agreement. In doing so, the court completely ignored and did not cite persuasive Michigan authority, reached legal conclusions inconsistent with Michigan law, and rendered the successorship language in the 2007 settlement agreement meaningless. Is determination of whether Reed Auto Group is a successor, is that a question of law or fact, or a mixed question of law and fact? We believe it's a question of law, your honor. Excuse me. The court made the determination that, as I'll get to here in a minute as well, that Reed Auto was not a successor under the agreement because the sale of the dealership was not accomplished by merger or stock sale. We think that that's a pure question of law. She also, the district court I should say, was interpreting a contract provision as well, and from a contract interpretation standpoint, that would be subject to de novo review as well. What about your argument that this is how dealerships succeed another dealership in the industry is by purchasing assets? That sounds to me like a factual argument. Well, whether it's factual or whether it's background, I think that that is not our principal argument. One could say that that's, you could say that the court did cite to that and did acknowledge in its findings of fact and conclusions of law that some 95% of deals are done through asset purchases, excuse me, by way of background information, but that's not our principal argument. No, I know it's not your principal argument, but I thought the whole point of everything in your briefs was that context is everything, that you don't look at whether this is IBM succeeding Microsoft. You are looking at a particular fact-intensive set of circumstances, and we look at that factual context to determine whether or not a dealership that purchases assets that has to go and acquire franchise rights from SCA and the like is in this particular context a successor. So, I'll answer that and shut up. I appreciate your question. I would say that that's, I don't believe that's how the court approached it. I think our position is that Michigan law, when the definition of successor is not defined in the agreement, that you resort to Black's Law Dictionary or other dictionaries for guidance, and those, and the court acknowledged that the Michigan courts follow straightforward definitions of successor as one who follows or one who takes the role, for instance. Our position is, the facts are largely not in dispute in this case. They really aren't. I mean, when you follow the facts that the district court found, and you apply Michigan's definition of successor, as well as Walnut Brook, and there's other cases as well that use this definition, you naturally have to come to the conclusion that Reed Auto is the successor. Some of those facts are, I just want to point them out from the, that the district court itself found here was that the largest asset purchased by Reed in the asset purchase agreement was the dealership franchise rights. The franchise rights are the right to be, to sell vehicles, to have the deal with the manufacturer to sell the FCA vehicles, the Dodge, Jeep, Ram, and so forth, vehicles from the sales area. The court said itself, Overland Park Jeep was essentially selling Reed the ability to become the exclusive dealer of those vehicle lines in the Overland Park sales area. That's what was being sold. The court also said and found, as a matter of fact, the deal closed on a Thursday. The next day, the dealership looked essentially the same, except the sign on the building changed from Overland Park Jeep to Reed Jeep. The court, as you recognize, Your Honor, that one of the manufacturer's representatives testified that most of these deals are done through asset purchase agreements, and I'll get to this in a minute, but I think it's, I should go ahead and point out now that FCA, the manufacturer, has to approve any dealership sale, whether it's by asset purchase agreement, merger, or stock sale. The court also cited to and seemed to approve the Black's Law Dictionary definition of successor as someone who succeeds to the office, rights, and responsibilities, or place of another, but then didn't apply that definition in the conclusions of law that were reached. And then the court also found and concluded, quote, there is evidence that Reed succeeded Overland Park Jeep as the FCA approved dealer for the Overland Park sales area. So we have all these findings of fact that effectively point to, under this preferred Michigan definition, that Reed Auto is Overland Park Jeep's successor, but then what did the court conclude? The court, really out of the blue, Your Honors, said, well, Reed is not a successor because the asset purchase agreement did not affect a merger between Reed and Overland Park, and there was no transfer of stock or ownership. The district court effectively found that in order to be a successor, the only way to become a successor is through a merger or through a transfer of stock, and that's simply not what Michigan law provides. We think that the district court erred. It cited no authority for this legal conclusion that it reached, which we think is sweeping, plainly inconsistent in our view with what Michigan law provides. It's specifically refuted by the Michigan Court of Appeals case of Walnut Brooks, which is admittedly unpublished, but it's well-reasoned. Walnut Brooks specifically said in that case, the successor did not formally merge with the predecessor or acquire its stock. The Michigan Court of Appeals used the dictionary definition that I previously cited to, and the court also recognized a Michigan Supreme Court case properly as characterizing asset purchasers as successors. That's the Foster versus Cone Blanchard Machine Company case, and in that case, the Michigan purchaser as a successor. Landers-McClarty is not able to distinguish this Michigan case law. It cites largely out-of-state authorities. It cannot distinguish Walnut Brooks on its face. Is the term successor ambiguous in the sense that, depending on the context, it could require a merger, a transfer of underlying liabilities, as well as assets, or not, depending on the context? So, is it susceptible to multiple interpretations? Is it susceptible to multiple interpretations? Well, I think that we've cited case law that says that we have, and you raised this issue a moment ago, Your Honor, that successor can mean different things in different contexts. And so, could there be a situation where a stock purchase alone is not enough? I suppose there could be. For instance, I think the case that Landers-McClarty relies on principally, which is Atchison-Kast in the asset purchase agreement, the purchaser only purchased a very small amount of the assets, and it was determined that, in that case, that the purchaser was not a successor. So, you know, I think it does have to be applied context, you know, case-by-case basis. So, are you saying it is ambiguous, or it is not ambiguous? We don't believe that the word successor is ambiguous. Since you're running low on time, can we switch over to the November 27, or 2017, agreement? What's the significance of that not incorporating anything about the earlier agreement? Okay. Yeah. The significance is, so under the dictionary definition, you know, what matters is whether Reed Auto assumed the role of Overland Park Chief. The 2017 agreement has excluded assets and included assets, and it never mentions anything about this. It seems like that's important. Your Honor, I would say, in response to that, there's a fundamental difference between being a successor and being a contractual assignee, okay? So, Reed Auto did not know about the existence of this agreement at the time of the APA, because the seller did not sell it to us. Had we known, that would have become part of an assumed contract, and we would have become an assignee. As we talk in the briefs, there's a fundamental distinction between being a successor and an assignee, and a contractual assignee. What if it had been a liability you didn't know about? Would you take that as well, or you only take the assets? Well, in this particular case, there were no liabilities to be assumed under the 2007 settlement agreement, because what Overland Park Chief had to do was dismiss its protest back in 07, and so that's all it had to do. That's why I say, what if. What if? Yeah, in other words, you want a rule that says, we get all the benefits, but we don't have to take any of the, all the sweet and none of the sour? Yeah. There's a distinction in the case law, and we've cited to it. There's veins of cases that basically say, in order to impose liabilities on a successor, there's a higher standard than if you're going to assume a right as against a signatory to the party. So, in this case, Landers-McClarty's a signatory to the agreement. It knows the successor language is in there. There's not as high a burden to assume those rights, because Landers-McClarty is already subject to them. If you're going to impose a liability, there may need to be notice provisions and knowledge that the successor is assuming a liability. I'm going to reserve my time, Your Honors, and speak to the cross-appeal when I get back up. Thank you very much. May it please the Court? First of all, to answer your question, Your Honor, there is liability under the 2007 settlement agreement, because if they were as determined that they were a successor, they had an obligation to keep that agreement confidential. That would be their liability. I specifically asked Mr. Reid on the stand, did you intend to incur any other contract that was not in this APA? And he says no. Well, then you did not intend to benefit from the rights. That is true. He did not intend to benefit from any of those rights that were not part of the APA. I want to address successor, third-party beneficiary, apologize for my scratchy throat, and then I'd like to address the cross-appeal as well. We believe Judge Teeter properly ruled that they are not the successor. It's not a question of law, it's a question of fact. Because if you look at the definition, not the definition, but the paragraph 16 in the settlement agreement, they must demonstrate that they are the successor of a party, which is Overland Park Jeep. Well, that's not defined any further. Successor is not defined. Michigan law, which we have to address here, is very clear that you must look at the facts and circumstances of each case. That's what we did. Judge Teeter ruled that's not what they did. There's no meaningful argument that they even made to demonstrate that. They solely focused on whether they're a manufacturer or a brute dealer in the Overland Park area. And that's what they do here as well. They don't look at that paragraph that demonstrates, or they must show, of being a successor of Overland Park Jeep. Not only that, but they completely abandoned the definition under Black's Law Dictionary. They used it in their summary judgment briefing, but they didn't apply the second portion of the Black Law Dictionary, which deals with corporation. That's referenced in the Atchison case. With reference to corporation, the term ordinarily means another corporation, which through amalgamation, excuse me, that's a tough one, consolidation or other legal succession, becomes invested with rights and assumes burdens of the first corporation. They didn't even look at that. Totality of the circumstances is what we looked at, all the facts. And based upon all the facts, we demonstrated that they're not. First... Well, counsel, maybe just before you go to the facts, do you have a legal definition of the word successor that you are adopting, or are you saying it's purely factual? I think it's the one that, I think it's pretty factual, but I think that's demonstrated by the Black's Law Dictionary, which was also utilized in the Willits case, which is the Sixth Circuit. That cites the Atchison case. And so I think it's based upon the facts and circumstances to demonstrate whether they're actually the successor of that corporation. Okay, do you take a position, though, on just a purchase is not enough? Are you arguing that? Purchase of the entity itself? Yeah, just a bona fide purchase. That's not enough to make you a successor? I think if you were the bona fide purchaser of the actual entity itself, that would be sufficient to be a successor of that entity. But they didn't purchase the entity. They didn't purchase any stock in the entity. They didn't purchase any rights at all in the entity itself. But I think we have to look at Michigan law when we apply that language in paragraph 16 that says, because the settlement agreement doesn't define successor, that we have to look at facts and circumstances. That's where the Walnut case is distinguished from here. The Walnut case, it wasn't talking about the successor of a party. It talked about a developer, including its successors. And then it goes on to say, both successors and assigns shall always be deemed to be included within the term of the developer. Not a party, but a developer. Our situation is specific to a party, demonstrating to the party. It might be similar if our settlement agreement says the successor shall always be a manufacturer approved dealer in the Overland Park area. It doesn't say that like the Walnut case picked up on. What's really strange about the Walnut case, and I don't know why, it has never been cited by any other court, including the Michigan Court of Appeals, which is the inferior case I cited. Both the appellate and the appellee cite it, but the court itself doesn't rely on it. I believe it's specific to the Condominium Act and its situation. And what's even more ironic, it applies the definition from the Random House Webster's College Dictionary. No disrespect, but that's not the law, black law dictionary here. But I think the Atchison case is really helpful here. Because I couldn't find a Sixth Circuit case that says, okay, these are the facts and circumstances that you should have considered. But the Atchison case did. It went into more specific when it looked at those facts and circumstances. But I think more importantly is we demonstrated at trial that all the facts and circumstances which are in our briefs were not transferred as part of this transaction. They were retained by Overland Park Jeep, the right to sell cars, the bond, the right to obtain a license from the state of Kansas, authority from the manufacturer. In fact, the manufacturer processed this as an asset transaction, not a successor transaction. And there's actually language in the Sales and Service Agreement that talks about a successor dealership and it talks about possession of the organization itself that remains. Cited that in our brief. Floor plan financing, they had to obtain their own. The Asset Purchase Agreement excluded substantial assets. No real estate was transferred, it was all retained. Dealership building, they had to obtain their own lease. Utilities, they had to obtain their own utilities. Sales tax, insurance, these are all things they had to obtain on their own, which were not transferred from Overland Park Jeep to them. These are all facts. And you rely on these facts and argue that it's a factual issue. Your adversary argues that it's a legal issue. The district court found that the term successor is unambiguous in footnote A. And so what I wonder is if you're both wrong and it's a mixed question of law and fact that turns in part on the meaning of the term successor and the application of all of these facts that you're addressing. And if it isn't, and I think the only import of the characterization is, what is our standard of review? And I think if it's a mixed question of law and fact, the standard of review turns on whether it's predominantly a legal issue or a factual issue. And I don't know whether it's, because it's both in this context. It's partly on the meaning of the term successor. You're referring to blacks. And it's also in part on these facts. So what is the standard of review if it is a mixed question of law and fact? Well, I don't necessarily, I think it's de novo, and I don't necessarily think you're wrong on that, Your Honor, because when you look at just, it says successor of a party, it doesn't give us any other clarification on what we should be looking at from that perspective. And then applying the Michigan law with that, Michigan law says then if it's not defined in the agreement, then we look at the facts and circumstances surrounding the transaction itself. And that's where it comes into play, and plus the plain language that's applied from the Blacks Law Dictionary. So it could be, you know, both. Don't get me wrong. It's just that we're looking at a situation where successor is not defined in this contract, and I believe Judge Teeter was correct, even on summary judgment, you know, I need to determine what the facts are and hear the facts to make that determination. But ultimately, no transfer of ownership, no transfer of managerial rights, none of that at all in here. I'd like to move on to the third party beneficiary argument, if I may. Judge Teeter ruled in summary judgment that they were not the third party beneficiary. The language, first of all, they're not intended as a third party. Obviously Michigan... Wait, that sounds on its face like a factual issue. You're saying that we can determine, and the district court can determine, as a matter of law, what the intent was. Whether it was to benefit an entity like this that ends up purchasing assets. Why isn't that at least a genuine issue of material fact as far as intent? Because I think you have to apply that with what the language is that they're intending to be the third party beneficiary is. And if you look at the very first paragraph under the settlement agreement, it provides Leonard McCarty agreed not to protest, or other words, challenge any relocation or establishment of any Daimler Chrysler vehicle lines in the Overland Park sales area. And it goes on. It does not say anything about a dealer, first of all. It only says any Daimler Chrysler vehicle line. Frankly, that plain language alone doesn't even give Overland Park Jeep the right to enforce that paragraph. Only Daimler Chrysler, or the owner of the line. Well, let me put it this way. By excluding the actor, does it include anybody that is wanting to relocate the Daimler Chrysler line of vehicles? Well, I don't think it does, because you have your successor and your assigned language in there. And the Ninth Circuit, I know we're not talking the Sixth, but it hasn't addressed it, says when you have a successor and assigned language in there, that it's meant to be particular to the parties, and not third parties. And I think when you look at that, coupled with the other three protesting dealerships, they have their own settlement agreement. If this agreement, the settlement agreement, would be applicable to every other Daimler Chrysler vehicle dealer, it would have been applicable to those three dealerships, and they wouldn't need another one. So how are you talking about these other agreements if the intent is unambiguous in this language? I don't think that, well, I think that's just... If it's unambiguous, then we wouldn't even be looking for it. I completely agree. But I... Exclusive evidence. And I apologize for interrupting you. No, no, no. I don't think it's ambiguous. I think it's clear, because dealer is not in here, not to mention the words third party beneficiary, are not even located in the document. And that's what Judge Teter was basing her decision on. Do you have anything else, Your Honor? No. I didn't know, you know. I just... Yeah. If I may, I'd like to go ahead and move on to the summary, or the attorney fee argument. Well, first of all, we'd ask that the court uphold or affirm Judge Teter on the successor in that. With respect to the motion for attorney fees, we admit, we didn't assume. We didn't assert a claim for breach of contract. So the question is, under Michigan law, in order to assert or pursue attorney fees, is there required to be an affirmative claim? And I don't believe so. And I think the Pauly Flex case is specifically on point with respect to that. When you have a situation where the parties have waived a right to a jury trial, and that's what they did in this contract. And you have to keep in mind, July of 2019, this settlement agreement was assigned from Overland Park Venture, which is also Jeep, to Reed Auto of Overland Park through Reed Auto Group. All right? So they are a party to the agreement as an assignee in July of 2019. The only difference, they were trying to retroactively apply their assignment. But at this point in time, you have a contract with the parties. That contract says the parties waived their right to a jury trial. It's to be determined by the court. The parties didn't have a jury trial, agreed it was waived. The parties applied Michigan law. And the parties used the federal district court in Kansas. But the point is, because Judge Teeter, or the trial court, could make a determination after the trial, collateral to the merits, that she could have made that determination without us having to assert an affirmative claim. September 2019, what do we have to assert? We don't know how much attorney fees there's going to be. We don't know how much time is going to be incurred. There's nothing quantified at that specific point in time to assert that claim. The other thing, obviously, the pretrial. We believe the pretrial should be liberally construed and that, frankly, there is no surprise. From September of 2019, we have stated we are going to pursue our attorney fees. Not an affirmative claim. We've stated that in our answer and also the pretrial order. But you could have. You could have asserted it as an independent claim. Is that right? I could have. I don't disagree with that. It could have been asserted. I don't, in all due respect, you know, where's your fine line when you have, to me, no damages on the day you're filing your counterclaim? And that's how we looked at it. Are there any other questions? Okay. Thank you for your time. Thank you. We respectfully request, affirm, and reverse the remand. Thank you. Your Honors, I'd briefly like to first address the third-party beneficiary argument. First, I should note that the, it's not required that the third party actually be referenced in the agreement. They don't have to even be in existence at the time. All that's required is that a class be identified. But it can't be excluded. And under paragraph 16, there's a heavy anchor and a short chain, which is to say that we're parties to this agreement. That seems like it's pretty confined and we're not drifting to distant shores. Plus, it doesn't make any sense to me that the parties contracting would want to extend it to other third parties. Well, in this case, Daimler Chrysler was also a party to it as well. And I should say, there's a whole statutory scheme under Kansas that we've cited case law that has to be read in conjunction with the contract. Basically, the only ones that can actually relocate a dealership or protest a dealership are dealerships as defined by the Kansas statute. And so, in the language, any relocation is used. Well, of the successors, or the successors of the parties to the agreement, and when you say, I guess, that Daimler Chrysler, it had a successor. So that party is bound by this, I would assume. But it's a straight line down from the parties to someone who takes that party's interest. I don't understand how we're drifting off to where third parties would have a right. That's what I need help with. Okay. I appreciate it. I think those are independent rights. I think you can have become a, a successor can enforce the agreement. I think a class of persons that benefit and that are arguably identified in the language of the agreement can enforce the agreement specifically. I don't think the successorship language negates a third party beneficiary claim, in short. And if I could, Your Honor, I would like to briefly address this attorney's fees issue. This was, We'll give you 20 seconds. Okay. Thank you. We were completely blindsided by this claim. He did, as Mr. Isles admits, they never asserted an affirmative claim for attorney's fees. In their answer, they had a straight prayer for attorney's fees. And then the pretrial order comes, he's got provisions specifically that are directly contrary to his theory as to how he's entitled to attorney's fees, for instance. He's taken the position that the 2007 settlement agreement is not enforceable. You need to really wrap it up, because you're, you're substantially over time. Okay. All right. Thank you, Your Honor. Okay. Appreciate it. Thank you very much. Do you have any questions? Okay. Great. Great.  You didn't have any questions on this one. Okay. This matter is submitted.